UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF WEST VIRGINIA

ELECTRONICALLY FILED
02/01/2022
U.S. DISTRICT COURT
Northern District of WV

| | |
|---|---|
| JEFFREY ALLEN, an individual; JANET ALLEN, an individual; JOHN REGAN, an individual; and CONNIE THOMAS, an individual,<br><br>　　　Plaintiffs,<br><br>　　　v.<br><br>CHEVRON U.S.A. INC., a Pennsylvania corporation; CHEVRON MIDCONTINENT L.P., a Texas limited partnership; EQT CORPORATION, a Pennsylvania corporation; and UNION OIL COMPANY OF CALIFORNIA, a California corporation;<br><br>　　　Defendants. | Civil Action No.<br><br>**5:22-CV-18 (Bailey)** |

## COMPLAINT

Plaintiffs JEFFREY ALLEN, JANET ALLEN, JOHN REGAN, and CONNIE THOMAS, hereby complain and allege against Defendant CHEVRON U.S.A. INC., CHEVRON MIDCONTINENT L.P., EQT CORPORATION, and UNION OIL COMPANY OF CALIFORNIA, by and through the undersigned counsel, as follows:

### PARTIES

1.　Plaintiff Jeffrey Allen, at all material times mentioned herein, is and was an adult individual residing at 2398 Dowler Road, Moundsville, West Virginia 26041 ("Mr. Allen").

2.　Plaintiff Janet Allen, at all material times mentioned herein, is and was an adult individual residing at 2398 Dowler Road, Moundsville, West Virginia 26041 ("Mrs. Allen", and together with Mr. Allen, the "Allens").

1

3. Plaintiff John Regan, at all material times mentioned herein, is and was an adult individual residing at 279 Grace Drive, Moundsville, West Virginia 26041.

4. Plaintiff Connie Thomas, at all material times mentioned herein, is and was an adult individual residing at 279 Grace Drive, Moundsville, West Virginia 26041. Plaintiffs Jeffrey Allen, Janet Allen, John Regan, and Connie Thomas are hereinafter referred to as "Plaintiffs").

5. Upon information and belief, Defendant Chevron U.S.A. Inc. ("Chevron"), at all material times mentioned herein, is and was a Pennsylvania corporation regularly doing business in the State of West Virginia with its executive office located at 6001 Bollinger Canyon Road, D1248, San Ramon, California, 94583.

6. Upon information and belief, Defendant Chevron Midcontinent L.P. ("Chevron Midcontinent"), at all material times mentioned herein, is and was a Texas limited partnership regularly doing business in the State of West Virginia with its executive office located at 6001 Bollinger Canyon Road, San Ramon, California, 94583.

7. Upon information and belief, EQT Corporation ("EQT"), at all material times mentioned herein, is and was a Pennsylvania corporation regularly doing business in the State of West Virginia with its executive office located at 625 Liberty Avenue, Suite 1700, Pittsburgh, Pennsylvania, 15222. Upon information and belief, EQT is the successor-in-interest of Chevron Appalachia, LLC.

8. Upon information and belief, Union Oil Company of California ("Union Oil"), at all material times mentioned herein, is and was a California corporation regularly doing business in the State of West Virginia with its executive office located at 6001 Bollinger Canyon Road, San Ramon, California, 94583. Union Oil, Chevron, Chevron Midcontinent, and EQT, are hereinafter collectively referred to as "Defendants."

9. Upon information and belief, Chevron, Chevron Midcontinent, Chevron Appalachia LLC, and Union Oil, at all material times herein, were closely interrelated business entities which share office space, corporate office holders and/or board members, and business interests.

10. Upon information and belief, EQT, as successor in interest to Chevron Appalachia, LLC, conducted business in West Virginia, acting in its individual corporate capacity as well as by and through its unincorporated divisions and departments, its corporate parents, subsidiaries and/or other affiliates, its alter ego corporations and other entities, its predecessors and/or its successors, including but not limited to Chevron Appalachia LLC.

## JURISDICTION AND VENUE

11. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1332. The amount in controversy exceeds $75,000, exclusive of interest and costs, and the parties are citizens of different states. Plaintiffs are citizens of West Virginia. Upon information and belief, Chevron is a Pennsylvania registered corporation with its principal place of business in California. Upon information and belief, Chevron Midcontinent is a Texas registered limited partnership with its principal place of business in California. Upon information and belief, EQT is a Pennsylvania registered limited liability company with its principal place of business in Pennsylvania. Upon information and belief, Union Oil is a California registered corporation with its principal place of business in California.

12. This Court has personal jurisdiction over Defendants because they conduct substantial business in the District, the property at issue in this action is located in this District, the contracts at issue are recorded in the District, and the actions giving rise to this Complaint took place in this District.

13. This Court has specific personal jurisdiction over Defendants because they maintain minimum contacts with this judicial district and this State. Defendants have purposely availed themselves of the West Virginia forum and West Virginia law and the claims in this action arise out of Defendants' activities in this District.

14. Venue is proper in this District under 28 U.S.C. § 1391(b) because the property that is the subject of this action is situated in this District, this District is where the contracts at issue were executed and recorded, this District was the place of performance and breach, and a substantial part of the events and/or omissions giving rise to Plaintiffs' claims occurred in the District.

## FACTUAL ALLEGATIONS

### A. The Allen Lease

15. On or about November 14, 2005, TriEnergy, Inc. and Plaintiffs' predecessors in interest, Mr. Donn R. Dowler and Lois W. Dowler (the "Dowlers") executed an oil and gas lease

16. (the "Allen Oil and Gas Lease") leasing the oil and gas rights appurtenant to approximately two hundred and eighty two (282) acres for which they owned, specifically the parcels of land situated in District of Washington, Marshall County in the State of West Virginia, Tax Parcel Numbers 6-37; 6-38; 6-39; and 6-40 and 6-2 (the "Allen Leased Premises"). A true and correct copy of the Allen Oil and Gas Lease is attached hereto as **Exhibit A**.

17. On or about May 1, 2006, a memorandum of oil and gas lease (the "Allen Memorandum of Oil and Gas Lease") was recorded with the Office of the Clerk of the Commission of Marshall County, West Virginia, at Deed Book 651, Page 600, stipulating that the Allen Oil and Gas Lease had been executed and appurtenant to the Allen Leased Premises. A true and correct copy of the Allen Memorandum of Oil and Gas Lease is attached hereto as **Exhibit B**.

18. On or about June 28, 2006, the Dowlers conveyed to the Allens a portion of the Allen Leased Premises, designated on the records of the Office of the Clerk of the Commission of Marshall County, West Virginia at Deed Book 653, Page 189 as Tax Parcel Numbers 6-38; 6-39; and 6-40 (the "July 5, 2006 Conveyance"), a true and correct copy of which is attached hereto as **Exhibit C**.

19. On or about November 30, 2010, the Dowlers conveyed to the Allens the remaining portion of the Allen Leased Premises designated on the records of the Office of the Clerk of the Commission of Marshall County, West Virginia at Deed Book 715, Page 209 as Tax Parcel Numbers 6 (the "December 2, 2010 Conveyance"), a true and correct copy which is attached hereto as **Exhibit D.**

20. Thus, via the July 5, 2006 Conveyance and the December 2, 2010 Conveyance, the Allens are the owners of the Allen Leased Premises.

21. On or about January 2, 2013, TriEnergy, Inc. assigned and conveyed its interest as lessee in the Allen Leased Premises to Defendant Chevron. The conveyance was recorded with the Office of the Clerk of the Commission of Marshall County, West Virginia, at Assignment Book 028, Page 356, with specific reference to the Leased Premises at Assignment Book 028, Page 367. A true and correct copy of the assignment is attached hereto as **Exhibit E.**

22. Paragraph four (4) of the Allen Oil and Gas Lease provides as follows:

> "Royalty Payment – (a) for crude oil, including condensate, Lessee shall pay to the Lessor, as royalty, free of production cost, one-eighth (1/8th) of the proceeds realized by Lessee from the sale of all crude oil produced and sold from the leased premises. (b) for gas [including casing-head gas] and all other substances covered hereby, the royalty shall be one-eighth (1/8th) of the proceeds realized by Lessee from the sale thereof, with no deduction of any costs incurred by the Lessee or its affiliates to gather, transport, compress, dehydrate or otherwise treat such prior to the point of custody transfer into pipelines or other facilities owned by a regulated utility or pipeline company or a non-affiliated third party."

See **Exhibit A** at ¶ 4.

23.     The Allen Oil and Gas Lease requires that royalties be calculated as 1/8 of the price received by the lessee from its sale of the oil, gas, and/or natural gas liquids in an arms-length transaction with an unrelated and unaffiliated third-party and does not permit the deductions of post-production costs in calculating the royalty payable under the Allen Oil and Gas Lease. *See id.*

### B.  The Regan Lease

24.     John Regan and Connie Thomas are owners of property located in Marshall County, West Virginia containing approximately 13.2 acres (the "Regan Leased Premises"), designated as Tax Parcel No. 14-6-1 and recorded in Deed Book 0652, Page 0251.

25.     On or about June 16, 2010, TriEnergy Holdings, LLC entered into an oil and gas lease with Plaintiffs John Regan and Connie Thomas (the "Regan Oil and Gas Lease") for the Regan Leased Premises.

26.     On or about June 16, 2010, a memorandum of lease (the "Regan Memorandum of Oil and Gas Lease") was recorded with the Office of the Clerk of the Commission of Marshall County, West Virginia, at Deed Book 0707, Page 0374, stipulating that the Regan Oil and Gas Lease had been executed and appurtenant to the Regan Leased Premises. A true and correct copy of the Regan Memorandum of Oil and Gas Lease is attached hereto as **Exhibit F**.

27.     Upon information and belief, the Regan Oil and Gas Lease contains materially the same terms as the Allen Oil and Gas Lease, including without limitation Paragraph 4 of the Allen Oil and Gas Lease. The Allen Oil and Gas Lease and Regan Oil and Gas Lease are hereinafter collectively refered to as the Oil and Gas Leases.

28.     Upon information and belief, the Regan Oil and Gas Lease requires that royalties be calculated as 1/8 of the price received by the lessee from its sale of the oil, gas, and/or natural

gas liquids in an arms-length transaction with an unrelated and unaffiliated third-party and does not permit the deductions of post-production costs in calculating the royalty payable under the Regan Oil and Gas Lease.

29.     Upon information and belief, TriEnergy Holdings, LLC assigned and conveyed its interest as lessee in the Regan Leased Premises to Defendant Chevron.

### C. Defendants Deduct Improper Costs from Royalties Owed to Plaintiffs.

30.     Despite the express requirements in the Oil and Gas Leases, Defendants have taken significant deductions from the royalties owed to Plaintiffs each month with no legal basis. No explanation has been given for the excessive amounts being improperly deducted.

31.     Defendants, on a monthly basis, also deduct "severance taxes" from the gross royalties payable to Plaintiffs.

32.     In material breach of their obligations under the express terms of Oil and Gas Leases, Defendants have failed to deliver and pay to Plaintiffs as royalty the specified fraction of the market value of the gas produced, without deduction of costs, and have instead impermissibly deducted costs in calculating and paying royalties to Plaintiffs.

33.     Defendants have and continue to improperly take deductions from the royalties owed to Plaintiffs, and without explanation, continue to calculate royalties due to Plaintiffs based on a net price that does not represent the wholesale market value, as expressly required in the Oil and Gas Lease.

34.     In violation of the express contractual obligation under the Oil and Gas Leases, Defendants have underpaid and continue to underpay the royalties due to Plaintiffs. Defendants' use of improper deductions violate the express language of the Oil and Gas Leases and West Virginia law.

35. Defendants, upon information and belief, deducted and continue to deduct sums that include costs that are not valid post-production costs under West Virginia law.

36. In addition, or in the alternative, upon information and belief, even if Defendants are otherwise entitled to deduct or give effect to post-production costs in calculating the royalties due to Plaintiffs, Defendants have acted in bad faith by deducting, or giving effect to deductions of purported post-production costs which are arbitrary, grossly excessive, and unreasonable in amount.

37. Defendants have intentionally defrauded Plaintiffs and enriched themselves by impermissibly deducting from Plaintiffs' royalty payments, including without limitation, deducting post-productions costs and additional costs that are not valid post-production costs, while fraudulently misrepresenting the validity of such costs to Plaintiffs.

38. Defendants intentionally and fraudulently concealed the improper calculation of royalties and have materially misrepresented its obligations and duties to Plaintiffs under the Oil and Gas Leases and under West Virginia law in that, on a monthly basis, Defendants provide royalty statements to Plaintiffs which knowingly, intentionally and falsely state that Defendants are entitled to withhold monies from Plaintiffs' royalty checks, which statements are false and misleading.

39. Defendants have and continue to give Plaintiffs royalty payments and statements that improperly calculate royalties due to Plaintiffs. Defendants have and continue to fraudulently mail royalty statements and payments to Plaintiffs reflecting improper royalties and deductions—fraudulently misrepresenting that the royalties and deductions were legitimate and permissible under Plaintiffs' Oil and Gas Leases.

40. Defendants intentionally and fraudulently deduct monies from royalty payments owed to Plaintiffs that Defendants are not legally entitled to, and are unlawfully profiting at Plaintiffs' expense.

41. Upon information and belief, Defendants specifically disguise the true nature of the royalties owed to Plaintiffs' and the nature of the deductions from Plaintiffs' royalty payments with the intent to conceal their improper conduct and maximize their profits at the detriment of Plaintiffs.

42. Plaintiffs have relied upon Defendants' fraudulent misrepresentations, including without limitation, the misrepresentations contained in their monthly statements, to their detriment, as to Defendants' compliance with the terms of the Oil and Gas Leases, causing past and future equitable and monetary damages to Plaintiffs.

## COUNT I
## BREACH OF CONTRACT
### *Against All Defendants*

43. Plaintiff realleges and incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

44. As set forth above, Defendants entered into binding express contracts with Plaintiff. Specifically, Defendants and Plaintiffs entered into Oil and Gas Leases. *See* **Exhibit A-B, F**.

45. The Oil and Gas Leases requires that royalties be calculated as 1/8 of the price received by the lessee from its sale of the oil, gas, and/or natural gas liquids in an arms-length transaction with an unrelated and unaffiliated third-party of oil and gas sold and does not permit the deductions of post-production costs in calculating the royalty payable under the Oil and Gas Leases.

46. By acquiring and accepting interests in the Oil and Gas Leases, Defendants became bound by the covenants, duties, and liabilities of the lessee, TriEnergy, Inc., to the extent of the interest acquired in the Oil and Gas Leases. Defendants had and continue to have an affirmative duty to timely pay the respective Plaintiffs the full, true and correct royalty due to him, her or it under the terms of the Oil and Gas Leases under which they hold their respective royalty interests.

47. Despite the express terms of the Oil and Gas Leases prohibiting Defendants from deducting costs from the royalties owed to Plaintiffs, Defendants have and continue to take improper deductions in violation of the Oil and Gas Leases. Defendants continue to calculate royalties owed to Plaintiffs based on a net price that does not represent the market value, as expressly required in the Oil and Gas Leases.

48. The improper calculation of royalties and imposition of deductions on the royalties payable to Plaintiffs breaches the express terms of the Oil and Gas Leases and the covenant of good faith and fair dealing implied in each of the Oil and Gas Leases.

49. Plaintiffs have performed or have substantially performed all of their obligations under the Oil and Gas Leases.

50. In contrast, Defendants materially breached their contractual obligations and continue to willfully violate the terms of the Oil and Gas Leases.

51. In addition, or in the alternative, Defendants have breached their implied covenants and duties inherent in the Oil and Gas Leases: (a) by failing to accurately calculate the true market value of the gas produced pursuant to the terms of the Lease; and/or (b) by deducting, or causing and permitting the deduction of, amounts which were not bona fide post-production costs, or were otherwise arbitrary, capricious, grossly excessive and unreasonable in amount, in calculating the royalties payable and paid to Plaintiffs.

52. As a result of Defendants' breaches, Plaintiffs have been harmed. Plaintiffs have suffered damages, and further special, consequential, incidental, and compensatory damages, in an amount to be determined at trial, in excess of $75,000.

WHEREFORE, Plaintiffs request judgment in their favor against Defendants in an amount in excess of $75,000 together with appropriate injunctive relief fees, costs, interest, and any other such other relief as this Court may deem just and proper.

## COUNT II
## CONVERSION
### *Against All Defendants*

53. Plaintiffs incorporate by reference the allegations set forth in the previous paragraphs above as though fully set forth herein.

54. As detailed above, Defendants wrongfully and intentionally miscalculated the market value of the gas produced from the Leased Premises, and caused unauthorized or artificially inflated and unreasonable deductions to be taken from royalties otherwise payable to Plaintiffs.

55. Plaintiffs were entitled to receive one-eighth of the wholesale market value of the gas produced from the Leased Premises, and were further entitled to receive the wrongfully deducted amounts pursuant to the Oil and Gas Leases.

56. Defendants collected the amounts wrongfully deducted from Plaintiffs' royalties.

57. Defendants have retained these funds unlawfully and without the consent of Plaintiffs, and have deprived Plaintiffs from exercising control over these funds, which belong to Plaintiffs.

58. Plaintiffs did not consent to Defendants' exercise of control over the royalties due to and owned by Plaintiffs

59. Defendants intend to permanently deprive Plaintiffs of these funds.

60. The funds which have been taken and retained by Defendants are specific and readily identifiable pursuant to royalty statements largely in the control of Defendants.

61. Defendants' conduct constitutes a conversion of Plaintiffs' property.

62. As a direct and proximate result of Defendants' wrongful conversion, Plaintiffs have suffered and continue to suffer damages.

63. Plaintiffs are entitled to recover from Defendants all damages and costs permitted, including all amounts wrongfully converted, which are specific and readily identifiable

64. Defendants' conduct was, and continues to be intentional, willful, wanton, malicious, grossly negligent, and with reckless disregard to Plaintiffs' rights.

WHEREFORE, Plaintiffs request judgment in their favor against Defendants in an amount in excess of $75,000 together with appropriate injunctive relief, punitive damages, fees, costs, interest, and any other such other relief as this Court may deem just and proper.

## COUNT III
## FRAUD
### *Against All Defendants*

65. Plaintiffs incorporate by reference the allegations set forth in the previous paragraphs above as though fully set forth herein.

66. Defendants, as detailed above, intentionally and fraudulently underpaid the royalties due to Plaintiffs and made false representations of fact on the royalty statements and payments Defendants issued to Plaintiffs. Defendants, without limitation, intentionally based the calculation of royalties payments on artificial gas prices, and knowingly and intentionally deducted impermissible amounts for purported costs in calculating the royalty payable under the Oil and Gas Leases.

67. Defendants, as detailed above, intentionally and knowingly concealed, misrepresented, and/or failed to reveal material information to Plaintiffs related to: (i) the true value of the oil, gas and related products, and (ii) the nature and legitimacy of the amounts deducted from Plaintiffs' royalties, which misrepresentations deprived Plaintiffs of the royalties to which they are entitled.

68. Defendants intended to injure Plaintiffs, and succeeded in injuring Plaintiffs, to the extent of the improper calculation or royalties and wrongful deductions alleged herein, without legal justification.

69. Defendants' conduct was designed to mislead Plaintiffs so that Defendants could deprive Plaintiffs of their contractually owed royalties and exercise control over monies to which Plaintiffs are entitled.

70. Defendants' fraudulent misrepresentations, including without limitation, the amounts and descriptions on Plaintiffs' royalty statements produce a false and undervalued determination of the overall royalty due to Plaintiffs, and are material and false statements of fact.

71. Plaintiffs relied upon the truthfulness of Defendants' transactions, and the royalty statements received from Defendants in ascertaining the amount of royalty due, and such reliance was justified under the circumstances. Plaintiffs have relied upon Defendants' misrepresentations, as contained in their monthly statements, to their detriment as to Defendants' compliance with the terms of the Oil and Gas Lease, causing past and future equitable and monetary damages to Plaintiffs.

72. Plaintiffs were directly, proximately and foreseeably damaged by Defendants' fraudulent misconduct in that they were denied royalties under the terms of the Oil and Gas Lease, and as required by law.

73. Defendants' conduct was, and continues to be intentional, willful, wanton, malicious, grossly negligent, and with reckless disregard to Plaintiffs' rights.

WHEREFORE, Plaintiffs request judgment in their favor against Defendants in an amount in excess of $75,000 together with appropriate injunctive relief, punitive damages, fees, costs, interest, and any other such other relief as this Court may deem just and proper.

## COUNT IV
## UNJUST ENRICHMENT
### *Against All Defendants*

74. Plaintiffs incorporate by reference the allegations set forth in the previous paragraphs above as though fully set forth herein.

75. Defendants have enriched themselves at the expense of Plaintiffs by intentionally underpaying the royalties due to Plaintiffs without Plaintiffs' knowledge, permission, or consent.

76. As a result of Defendants' intentional miscalculation of royalties owed and impermissible deductions of excessive and artificially inflated post-production costs from Plaintiffs' royalties, Plaintiffs have directly or indirectly conferred benefits on Defendants.

77. Defendants have appreciated, accepted and retained such benefits under circumstances which would make it inequitable and unjust for Defendants to retain such benefits without payment of value to Plaintiffs.

78. Defendants' conduct was, and continues to be intentional, willful, wanton, malicious, grossly negligent, and with reckless disregard to Plaintiffs' rights.

WHEREFORE, Plaintiffs request judgment in their favor against Defendants in an amount in excess of $75,000 together with appropriate injunctive relief, punitive damages, fees, costs, interest, and any other such other relief as this Court may deem just and proper.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment against Defendants, and each of them, as follows:

a. That this Court decree that Defendants have breached its contract with Plaintiffs have acted fraudulently, and have violated the covenant of good faith and fair dealing;

b. That judgment be awarded against Defendants for all monies unlawfully deducted and retained by Defendants from Plaintiffs' royalty interest in the Oil and Gas Leases;

c. That Plaintiffs be awarded compensatory damages for Defendants' breach of contract and violation of its covenants with Plaintiffs;

d. That Plaintiffs be awarded compensatory and punitive damages suffered by Plaintiffs as a result of the fraudulent conduct of Defendants;

e. That individual Plaintiffs be awarded their legal fees and costs incurred in the prosecution of this civil action as provided for under and pursuant to West Virginia Code § 46A-5-101 and 104, *et seq*.;

f. That Plaintiffs be awarded compensatory damages from Defendants for annoyance and inconvenience;

g. That punitive damages be awarded against Defendants sufficient to punish them for their wanton and malicious corporate acts and to deter them from continuing to act in the unlawful manner toward their Lessors;

h. That Plaintiffs be awarded prejudgment and post-judgment interest on all sums payable from the time owed of the legal rate of interest from the time the obligation first accrued;

i. That Plaintiffs be awarded such other and further relief, both general and special, as the Court deems just and proper.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Date: February 1, 2022 | ___/s/ David C. Hook_____ |
|  | David C. Hook (WV I.D. No. 10490) |
|  | Phillip C. Hook (*Pro hac vice forthcoming*) |
|  | Joy D. Llaguno (*Pro hac vice forthcoming*) |
|  | **HOOK & HOOK PLLC** |
|  | 430 East Oakview Drive, Suite 101 |
|  | Waynesburg, PA 15370 |
|  | Phone: 724-802-7144 |
|  | Fax:    724-802-7959 |
|  | Email: dhook@hooklaw.com |
|  |            phook@hooklaw.com |
|  |            jllaguno@hooklaw.com |

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury for all claims and causes of action for which a right to trial by jury exists.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Date: February 1, 2022 | ___/s/ David C. Hook_____ |
|  | David C. Hook (WV I.D. No. 10490) |
|  | Phillip C. Hook (*Pro hac vice forthcoming*) |
|  | Joy D. Llaguno (*Pro hac vice forthcoming*) |
|  | **HOOK & HOOK PLLC** |
|  | 430 East Oakview Drive, Suite 101 |
|  | Waynesburg, PA 15370 |
|  | Phone: 724-802-7144 |
|  | Fax:    724-802-7959 |
|  | Email: dhook@hooklaw.com |
|  |            phook@hooklaw.com |
|  |            jllaguno@hooklaw.com |