IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG

**JEFFREY ALLEN, an individual; JANET ALLEN, an individual; JOHN REGAN, an individual; and CONNIE THOMAS, an individual,**

        Plaintiffs,

v.                                   **CIVIL ACTION NO.: 5:22-CV-18 (GROH)**

**CHEVRON U.S.A. INC., a Pennsylvania corporation; CHEVRON MIDCONTINENT L.P., a Texas limited partnership; EQT CORPORATION, a Pennsylvania corporation; and UNION OIL COMPANY OF CALIFORNIA, a California corporation,**

        Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION

This matter is before the Court for consideration of the Defendants' Motion to Compel Arbitration and, In the Alternative, Motion for Partial Dismissal. ECF No. 11. The Plaintiffs have filed a Response in Opposition [ECF No. 14], and the Defendants have entered a Reply [ECF No. 15]. Accordingly, the Defendants' motion has been fully briefed and is ripe for adjudication. For the following reasons, the Court **GRANTS** the Defendants' motion and **STAYS** this civil action pending the completion of arbitration.

### I. Background

Jeffrey Allen, Janet Allen, John Regan, and Connie Thomas ("Plaintiffs") are landowners in Marshall County, West Virginia. Over time, the Plaintiffs joined oil and gas leases with TriEnergy, Inc. At present, the Plaintiffs are all parties to oil and gas leases with Chevron U.S.A. Inc. ("Defendant Chevron").

Plaintiffs Jeffrey and Janet Allen's predecessors-in-interest entered into an oil and gas lease with TriEnergy, Inc., dated November 14, 2005, covering around two hundred and eighty-two acres. After two conveyances from their predecessors-in-interest, the Allen Plaintiffs became owners of the leased premises. In January 2013, TriEnergy, Inc. assigned and conveyed its interest as lessee in the Allen Plaintiffs' property to Defendant Chevron. Similarly, in June 2010, Plaintiffs John Regan and Connie Thomas entered into an oil and gas lease with TriEnergy Holdings, covering about thirteen acres. The complaint alleges that, sometime later, TriEnergy assigned and conveyed its interest as lessee in the Regan Plaintiffs' property to Defendant Chevron as well.

Both Leases contain materially the same terms, including identical arbitration and royalty provisions. The arbitration provision reads as follows:

> ARBITRATION - Any question concerning this lease or performance thereunder shall be ascertained and determined by three disinterested arbitrators, one thereof to be appointed by the Lessor, one by the Lessee and the third by the two so appointed as aforesaid, and the award of such three persons shall be final and conclusive. The cost of such arbitration will be borne equally by the parties.

ECF No. 1-1, ¶ 17.

The royalty provision provides:

> Royalty Payment - (a) For crude oil, including condensate, Lessee shall pay to the Lessor, as royalty, free from production costs, one-eighth (1/8th) of the proceeds realized by Lessee from the sale of all crude oil produced and sold from the leased premises. (b) For gas [including casing-head gas] and all other substances covered hereby, the royalty shall be one-eighth (1/8th) of the proceeds realized by Lessee from the sale thereof, with no deduction of any costs incurred by the Lessee or its affiliates to gather, transport, compress, dehydrate or otherwise treat such prior to the point of custody transfer into pipelines or other facilities owned by a regulated utility or pipeline company or a non-affiliated third party.

ECF No. 1-1, ¶ 4.

Beginning some time after acquiring an interest in the Leases, the Plaintiffs allege that the Defendants took significant deductions from the monthly royalties owed to the Plaintiffs. Specifically, the Plaintiffs claim that the Defendants deducted a severance tax from the gross royalties. The Plaintiffs also aver that the Defendants calculated the royalties based on a net price that does not reflect the wholesale market value.

Based on these facts, the Plaintiffs filed a Complaint [ECF No. 1] with this Court, alleging four causes of action. First, in Count One, the Plaintiffs bring a breach of contract claim against all Defendants. Therein, the Plaintiffs allege that the Defendants continue to take improper deductions from the Plaintiffs' royalties and continue to use a net price in their calculations that does not represent the market value. The Plaintiffs also argue that the Defendants have breached their implied covenants and duties inherent in the Leases by taking unwarranted deductions and using flawed calculations.

In Count Two, the Plaintiffs assert a conversion claim against all Defendants. Therein, the Plaintiffs allege that the Defendants intentionally miscalculated the market value of the gas and took unauthorized deductions from the Plaintiffs' royalties. The Plaintiffs maintain that they did not consent to these deductions and the Defendants have retained these funds unlawfully. The Plaintiffs aver that the funds the Defendants have retained are specific and readily identifiable from the royalty statements. Ultimately, the Plaintiffs argue that the Defendants' deductions and miscalculations amount to wrongful conversion.

Next, in Count Three, the Plaintiffs bring a fraud claim against all Defendants. Therein, the Plaintiffs allege that the Defendants made false representations of fact on

the royalty statements, intentionally and fraudulently underpaying the Plaintiffs. The Plaintiffs also claim that the Defendants intentionally used incorrect gas prices in their royalty calculations. Specifically, the Plaintiffs aver that the Defendants intentionally and knowingly concealed, misrepresented, or failed to provide material information related to the true value of oil, gas, and related products as well as the circumstance of the royalty deductions. The Plaintiffs claim that the Defendants created a false and undervalued determination of the Plaintiffs' royalties through material false statements of fact related to their royalties.

Lastly, the Plaintiffs set forth an unjust enrichment claim against all Defendants in Count Four. Therein, the Plaintiffs contend that the Defendants have enriched themselves by intentionally miscalculating royalties and taking excess deductions. The Plaintiffs argue that it is inequitable and unjust for the Defendants to retain these funds.

The Defendants now move this Court to compel arbitration, or, in the alternative, partially dismiss the Plaintiffs' complaint. In their motion, the Defendants argue that all the claims raised in the complaint are governed by the parties' arbitration agreement. The Defendants contend that each cause of action centers on the same allegation: the Defendants miscalculated the royalties under the terms of their respective Leases. Because all the Plaintiffs' claims fall within the scope of the parties' arbitration agreement, the Defendants aver that this civil action should be dismissed, rather than stayed. In the alternative, the Defendants argue that the Plaintiffs' fraud, unjust enrichment, and conversion claims should be dismissed under the gist of the action doctrine.

In response, the Plaintiffs first assert that the arbitration agreement is an unconscionable contract of adhesion and should not be enforced. Should the Court find

the arbitration agreement enforceable, the Plaintiffs contend that their civil action should be stayed, not dismissed, because the agreement only covers their breach of contract claim. Further, the Plaintiffs argue that their remaining causes of action alleging fraud, unjust enrichment, and conversion should not be dismissed because they are not precluded by the gist of the action doctrine. Regarding the fraud claim, the Plaintiffs argue that the gist of the action doctrine does not bar claims involving fraudulent deductions. Additionally, the Plaintiffs aver that their claims of conversion and unjust enrichment arise from broader social duties imposed by law.

Replying to the Plaintiffs' arguments, the Defendants argue that the arbitration provision is neither procedurally nor substantively unconscionable and should be enforced in this matter. In support, the Defendants cite case law from both the West Virginia Supreme Court of Appeals and the Northern District of West Virginia that analyzed an identical arbitration provision and rejected arguments that the provision was substantively unconscionable. Additionally, the Defendants emphasize that the Plaintiffs did not address whether the Defendants' motion to compel satisfied the United States Court of Appeals for the Fourth Circuit's standard for compulsory arbitration under the Federal Arbitration Act. The Defendants also emphasize that the arbitration agreement covers all the claims raised by the Plaintiffs in their complaint and the Court should dismiss, not stay, this case.

Even so, should the Court find the arbitration agreement does not cover the Plaintiffs' claims, the Defendants reiterate that the gist of the action doctrine indeed bars the Plaintiffs' claims for fraud, conversion, and unjust enrichment. Specifically, the Defendants argue that the gist of the action doctrine does preclude the Plaintiffs'

fraudulent deductions allegation. For the conversion and unjust enrichment claims, the Defendants oppose the notion that they are governed by societal duties and instead argue that the claims are grounded in the Leases and should be barred by the gist of the action doctrine.

## II. Applicable Law

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, applies to "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof." 9 U.S.C. § 2. The FAA reflects "a liberal federal policy favoring arbitration agreements." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). This policy is supported by Congress's view that arbitration constitutes a more efficient dispute resolution process than litigation. Hightower v. GMRI, Inc., 272 F.3d 239, 241 (4th Cir. 2001). Therefore, "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration." Adkins v. Labor Ready, Inc., 303 F.3d 496, 500 (4th Cir. 2002) (quoting Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ., 489 U.S. 468, 476 (1989)).

A district court applies "the federal substantive law of arbitrability, which governs all arbitration agreements encompassed by the FAA." Id. (citations omitted). However, a district court applies ordinary state law principles governing the formation of contracts, "including principles concerning the validity, revocability, or enforceability of contracts generally." Muriithi v. Shuttle Exp., Inc., 712 F.3d 173, 179 (4th Cir. 2013) (internal citations omitted). Section 2 of the FAA provides that arbitration agreements may be

declared unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "This saving clause permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 349 (2011) (quoting Doctor's Assoc., Inc. v. Casarotto, 517 U.S. 681, 687 (1996)).

> To compel arbitration under the FAA, the Fourth Circuit requires the moving party
>> demonstrate "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute."

Adkins, 303 F.3d at 500-01 (quoting Whiteside v. Teltech Corp., 940 F.2d 99, 102 (4th Cir. 1991)). "Under the FAA, courts must stay any suit 'referable to arbitration' under an arbitration agreement, where the court has determined that the agreement so provides, and one of the parties has sought to stay the action." Noohi v. Toll Bros., Inc., 708 F.3d 599, 604 (4th Cir. 2013).

"A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. Motions to compel arbitration "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of

7

coverage." Zandford v. Prudential–Bache Sec., Inc., 112 F.3d 723, 727 (4th Cir. 1997) (citations and internal quotation marks omitted). "Indeed, the heavy presumption of arbitrability requires that when the scope of the arbitration clause is open to question, a court must decide the question in favor of arbitration." Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co., 867 F.2d 809, 812 (4th Cir. 1989) (citing United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960)).

### III. Analysis

#### A. Whether the Arbitration Provision is Valid

Before addressing whether the arbitration provision in the parties' Leases governs any or all claims raised in the Plaintiffs' complaint, the Court must first determine whether the arbitration provision is a valid agreement. The Plaintiffs, in their response, argue that the arbitration clause is both procedurally and substantively unconscionable. The Plaintiffs claim that the arbitration provision is a contract of adhesion with a gross disparity of bargaining power between them and the Defendants. Substantively, the Plaintiffs assert that the cost sharing component of the provision is unconscionable because it functions as a financial bar to redress for the Plaintiffs.

While district courts must apply "the federal substantive law of arbitrability, which governs all arbitration agreements encompassed by the FAA," courts must also apply the ordinary state law principles regarding the formation of contracts, such as the "validity, revocability, or enforceability of contracts generally." Muriithi, 712 F.3d at 179 (internal citations omitted); see also 9 U.S.C. § 2 (providing that arbitration agreements may be unenforceable "upon such grounds as exist at law or in equity of the revocation of any contract."); AT&T Mobility LLC, 563 U.S. at 339. Indeed, "generally applicable contract

8

defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2" of the FAA. See Doctor's Assocs., Inc., 517 U.S. at 687 (citations omitted). Here, the Plaintiffs assert the defense of unconscionability.

When considering whether a contract is unconscionable, courts must consider the specific provision at issue from *both* a substantive and procedural perspective and find *both* exist. State ex rel. Johnson Controls, Inc. v. Tucker, 729 S.E.2d 808, 817 (W. Va. 2012); see also House v. Rent-A-Ctr. Franchising Int'l, Inc., No. CV 3:16-06654, 2016 WL 7394552, at *5 (S.D.W. Va. Dec. 21, 2016) ("West Virginia law requires a party to prove both procedural and substantive unconscionability."). The degree of substantive and procedural unconscionability needed to find a contract unenforceable is not a defined point. Rather, it is a "sliding scale" with "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the clause is unenforceable, and vice versa." Robinson v. Quicken Loans Inc., 988 F. Supp. 2d 615, 623 (S.D.W. Va. 2013).

i. **Procedural Unconscionability**

When analyzing a contract clause for procedural unconscionability, courts must investigate for "inequities, improprieties, or unfairness in the bargaining process and formation of the contract." Mey v. DIRECTV, LLC, No. 5:17-CV-179, 2021 WL 973454, at *4 (N.D.W. Va. Feb. 12, 2021) (quoting Brown v. Genesis Healthcare Corp., 729 S.E.2d 217, 227 (W. Va. 2012)). Procedural unconscionability occurs when there is a "lack of a real and voluntary meeting of the minds of the parties, considering all the circumstances surrounding the transaction." Brown, 729 S.E.2d at 227. Evidence of procedural unconscionability can be found in "the age, literacy, or lack of sophistication of a party;

9

hidden or unduly complex contract terms; the adhesive nature of the contract; and the manner and setting in which the contract was formed, including whether each party had a reasonable opportunity to understand the terms of the contract." Id.

The Plaintiffs argue that the arbitration provision of their Leases are adhesion contracts drafted by a national corporation with more experience and bargaining power, and the provision was offered as standard language, requiring the landowners to 'take it or leave it.' The West Virginia Supreme Court cautions courts to scrutinize contracts of adhesion carefully, particularly to the extent the contract includes provisions that would deter enforcement and vindication of rights, protections, relief, and remedies otherwise available under the law. Id. at 228. "A contract of adhesion should receive greater scrutiny than a contract with bargained-for terms to determine if it imposes terms that are oppressive, unconscionable or beyond the reasonable expectations of an ordinary person." Id. However, "finding that there is an adhesion contract is the beginning point for analysis, not the end of it; what courts aim at doing is distinguishing good adhesion contracts which should be enforced from bad adhesion contracts which should not." State ex rel. Ocwen Loan Servicing, LLC v. Webster, 752 S.E.2d 372, 389 (W. Va. 2013). Indeed, a simple imbalance of bargaining power falls far short of the type of "gross inadequacy" required to show procedural unconscionability. See State ex rel. Johnson Controls, Inc. v. Tucker, 729 S.E.2d 808, 817 (W. Va. 2012).

The Plaintiffs offer nothing further than the assertion that the Leases constitute adhesion contracts. While the Plaintiffs may prefer if the Court's analysis ends there, it does not. Simply finding that a contract is a contract of adhesion does not equate to a finding of unconscionability. Therefore, this Court finds that the Leases do not qualify as

the type of "bad adhesion contracts" that courts should not enforce. See State ex rel. Ocwen Loan Servicing, LLC, 752 S.E.2d at 389.

The Plaintiffs further claim that the provision was procedurally unconscionable because the original parties to the Lease were 80 and 79 years old at the time of signing, they had no experience with law or business contracts, and they did not have assistance of counsel in signing the leases. This Court finds that the facts as alleged by the Plaintiffs do not rise to the level of procedural unconscionability.

The precedent set by the West Virginia Supreme Court of Appeals in Chevron U.S.A., Inc. v. Bonar, is on point and instructive. No. 16-1213, 2018 WL 871567, at *5-*6 (W. Va. Feb. 14, 2018). In Bonar, the West Virginia Supreme Court of Appeals addressed an identical arbitration provision, drafted by the same original oil and gas lessee as the Court does here, and declined to find that the argument was procedurally unconscionable. Id. In Bonar, the lessors also did not have assistance of counsel and alleged that they were not sophisticated or experienced in negotiating contracts. Id.

This Court similarly finds that the circumstances surrounding the signing of the Leases do not rise to the level of procedural unconscionability. First, the Plaintiffs provide no evidence to support their assertion that the Lease was presented on a take it or leave it basis; presumably, the original lessors could have chosen to lease with another company, or, not at all. Further, lack of representation at the time of signing is not indicative of procedural unconscionability. In fact, "a court can assume that a party to a contract has read and assented to its terms, and absent fraud, misrepresentation, duress, or the like, the court can assume that the parties intended to enforce the contract as drafted." New v. GameStop, Inc., 753 S.E.2d 62, 76 (W. Va. 2013).

11

Most importantly, the terms of the arbitration provision were not hidden or unduly complex. Quite the opposite, the Lease is three pages, and the arbitration provision is found on page two. Further, the arbitration provision is identified in capital letters, written in plain English, and spans only two sentences. Altogether, this Court does not find that there was "lack of a real and voluntary meeting of the minds of the parties, considering all the circumstances surrounding the transaction." Brown, 729 S.E.2d at 227.

Therefore, upon review, the Court finds no evidence of procedural unconscionability in the Leases. For a contract to be unconscionable, both procedural and substantive unconscionability must exist. Tucker, 729 S.E.2d at 817. While finding procedural unconscionability lacking is enough to dispel unconscionability concerns, the Court will still examine the arbitration provision of the Leases for substantive unconscionability as well.

### ii. Substantive Unconscionability

When analyzing a contract for substantive unconscionability, a court must look to terms of the contract itself to determine whether a "term is one-sided and will have an overly harsh effect on the disadvantaged party." Webster, 752 S.E.2d at 389. There are no set factors for courts to weigh as the analysis will vary based on the content of the agreement. "Generally, courts should consider the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and public policy concerns." Id.

The Plaintiffs present only one argument in support of their contention that the arbitration provision is substantively unconscionable. The Plaintiffs argue that the cost sharing aspect of the arbitration provision is substantively unconscionable because it acts

12

as a way to bar the Plaintiffs from seeking redress. The Plaintiffs cite the American Arbitration Association's fee schedule, even though the provision does not require the parties to arbitrate through the Association.

As above, the Court finds the precedent set by the West Virginia Supreme Court of Appeals in <u>Bonar</u>, on point and instructive. 2018 WL 871567, at *5-*6. In <u>Bonar</u>, the West Virginia Supreme Court analyzed an identical arbitration provision and similarly rejected an argument alleging substantive unconscionability based on cost-sharing. The West Virginia Supreme Court found that the arbitration provision was not one-sided and emphasized that the agreement specifically requires an equal sharing of costs between parties. Moreover, at least one court in this district so similarly found. <u>Heller v. TriEnergy, Inc.</u>, 877 F. Supp. 2d 414, 428 (N.D.W. Va. 2012) (analyzing an identical arbitration provision and declining to find "that this cost sharing provision renders the challenged arbitration clause substantively unconscionable").

Indeed, this Court similarly struggles to find how a requirement to equally share costs between the parties is so unfair and one-sided to rise to the level of substantive unconscionability. Therefore, this Court finds that the arbitration provision is not substantively unconscionable. Accordingly, having found that the provision is neither procedurally nor substantively unconscionable, the Court finds the provision enforceable.

### B. Whether the Arbitration Provision Governs this Action

Having found that the arbitration provision is enforceable, the Court must now determine whether the arbitration provision governs this civil action, either in full or in part. To compel arbitration under the FAA, the Fourth Circuit requires a moving party

> demonstrate "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration

13

> provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute."

Adkins, 303 F.3d at 500-01 (quoting Whiteside, 940 F.2d at 102). The Defendants assert that their motion satisfies each factor set forth by the Fourth Circuit. The Court notes that the Plaintiffs have not presented any argument pertaining to whether the Defendants have satisfied the standard for compelling arbitration.

First, a dispute between the parties clearly exists. The Plaintiffs' complaint alleges that the Defendants took significant deductions from the monthly royalties owed to the Plaintiffs, that the Defendants deducted an improper severance tax from the gross royalties, and that the Defendants calculated the royalties based on a net price that does not reflect the wholesale market value. Indeed, simply by filing a lawsuit against the Defendants, a dispute clearly exists. Canyon Sudar Partners, LLC v. Cole ex rel. Haynie, No. CIV.A. 3:10-1001, 2011 WL 1233320, at *11 (S.D.W. Va. Mar. 29, 2011) (finding that a dispute exists because a lawsuit was filed); Heller, 877 F. Supp. 2d at 429 (same).

Next, the second Adkins factor is satisfied because the arbitration provision of the Lease constitutes a written agreement, and the agreement covers the dispute raised in the Plaintiffs' complaint. First, it is plainly apparent that the Lease is a written agreement, and it includes an arbitration provision. Second, the arbitration provision covers the dispute raised by the Plaintiffs. As found by another court in this district when analyzing an identical arbitration provision, the Lease contains "a clear, unambiguous, and broad arbitration provision covering all disputes that might arise between the parties." Heller, 877 F. Supp. 2d at 429. As in Heller, the arbitration provision before the Court covers

14

"[a]ny question concerning this lease or performance thereunder." ECF No. 1-1, ¶ 17. Each cause of action raised in the complaint relates to the Lease. Specifically, each cause of action alleges that the Defendants violated the royalty provision in some form.

Indeed, in Count One alone, the Plaintiffs refer to the Lease and the royalties governed therein more than ten times. In Count Two, the Plaintiffs refer to the Lease and the royalties five times. In Count Three, the Plaintiffs refer to the Lease and the subject royalties more than ten times. Lastly, in Count Four the Plaintiffs refer to the royalties three times. Simply put, none of the Plaintiffs' claims can be brought without reference to the Lease or to the royalties governed by the Lease. Thus, this Court finds that the arbitration provision covers all claims raised by the Plaintiffs as each claim deals with the Defendants' performance under the Lease.

Third, the transactions described in the Plaintiffs' complaint directly relate to interstate commerce. As described in the Plaintiffs' complaint, the parties to the transactions are residents of different states, which implicates interstate commerce. Cochran v. Coffman, No. 2:09-CV-00204, 2010 WL 417422, at *3 (S.D.W. Va. Jan. 28, 2010) (finding the third Adkins factor satisfied because "the parties are of diverse citizenship, and thus their business relationships cross interstate lines") (citing Allied–Bruce Terminix Cos., Inc. v. Dobson, 513 U.S. 265 (1995)); Van Lehn v. MedaStat USA, L.L.C., No. CIV.A. 2:05-CV-00283, 2005 WL 1845269, at *2 (S.D.W. Va. Aug. 1, 2005) (finding the third Adkins factor satisfied and noting that the subject "transaction bears a relationship to interstate commerce because it was entered into between a citizen of West Virginia and a business incorporated in Kentucky"). Additionally, the transactions concern the production of natural gas transported through interstate pipelines, which is subject to

15

extensive federal regulation. Schneidewind v. ANR Pipeline Co., 485 U.S. 293 (1988) (observing that the Natural Gas Act comprehensively regulates the field of gas transportation from the area of production to the area of consumption).

Lastly, the fourth Adkins factor is satisfied because the Plaintiffs filed this complaint without engaging in arbitration. Therefore, this Court finds that all four of the Adkins factors are satisfied. Accordingly, having already found the agreement enforceable, this Court finds that arbitration in this matter is compulsory under the FAA.

### C.  Whether a Dismissal or a Stay is Warranted

Having found that the arbitration provision in the Lease governs all the claims raised by the Plaintiffs in their complaint, the only remaining issue before this Court is whether to stay or dismiss this civil action. Looking only to the statute, the relevant section of the FAA provides that

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. However, as noted by the Fourth Circuit, tension exists within the Circuit's precedent as to whether a stay or dismissal is appropriate when all claims in a matter are subject to arbitration. Noohi, 708 F.3d at 605 n.2. Indeed, the Plaintiffs aver that, if arbitration is compelled, then this matter should be stayed, while the Defendants argue that a dismissal, rather than a stay, is warranted in this matter.

Beginning in 2001, the Fourth Circuit has flip flopped on whether a stay or dismissal is appropriate. Indeed, the Fourth Circuit has flip flopped even within the same year. In March 2001, in Bankers, the Circuit cited the FAA's requirement to stay proceedings when an issue is arbitrable and held that "[i]f the issues in the case are within the contemplation of the arbitration agreement, the FAA's stay-of-litigation provision is mandatory, and there is no discretion vested in the district court to deny the stay." United States v. Bankers Ins. Co., 245 F.3d 315, 319 (4th Cir. 2001). Then, just three months later, in June, the Fourth Circuit held that "[n]otwithstanding the terms of § 3, ... dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable." Choice Hotels Int'l, Inc, v. BSR Tropicana Resort, Inc., 252 F.3d 707, 709-10 (4th Cir. 2001).

Upon review of Fourth Circuit precedent before and after Choice Hotels, this Court finds that most Fourth Circuit precedent supports the issuance of a stay when all issues in a case are arbitrable. E.g., Hooters of Am., Inc. v. Phillips, 173 F.3d 933, 937 (4th Cir. 1999); Bankers, 245 F.3d at 319; Adkins, 303 F.3d at 500; Noe v. City Nat'l Bank of W. Va., 828 F. App'x 163, 165 (4th Cir. 2020). But see Choice Hotels, 252 F.3d at 709-10; Wheeling Hosp., Inc. v. Health Plan of the Upper Ohio Valley, Inc., 683 F.3d 577, 584 (4th Cir. 2012 (citing Choice Hotels)). This principle is bolstered by the text of the FAA directing courts to issue a stay. 9 U.S.C. § 3 ("[U]pon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement.")

Of all the Fourth Circuit precedent governing this issue, this Court finds substantial guidance from Adkins, as it was decided just one year *after* Choice Hotels, and is an oft-

17

cited decision by courts applying the Fourth Circuit's standard for whether parties should be sent to arbitration.[1] In Adkins, the Fourth Circuit plainly held that the "stay-of-litigation provision is mandatory." 303 F.3d at 500. Given the weight of the precedent supporting a stay as the proper avenue of relief, including the Fourth Circuit's declaration in Adkins, shortly after Choice Hotels, the Court similarly finds that a stay is the appropriate counterpart to a motion to compel arbitration. Therefore, this Court finds that this matter should be stayed pending arbitration.

## IV. Conclusion

For the reasons stated above, the Court finds that the Defendants' Motion to Compel Arbitration and, In the Alternative, Motion for Partial Dismissal [ECF No. 11] should be, and hereby is, **GRANTED**. The Court **ORDERS** that the Plaintiffs' claims be **SUBMITTED TO ARBITRATION**, pursuant to this Court's Order and the parties' agreement to arbitrate. The Court further **ORDERS** that this civil action is hereby **STAYED** pending completion of the arbitration proceeding. The parties are **DIRECTED** to notify this Court forthwith upon the conclusion of the matter.

The Clerk of Court is **DIRECTED** to transmit copies of this Order to all counsel of record herein.

**DATED:** March 22, 2023

GINA M. GROH
UNITED STATES DISTRICT JUDGE

---

[1] A Westlaw search shows over four hundred cases as citing Adkins as the source for the Fourth Circuit's four-factor test governing motions to compel arbitration.